6-5023 United Pacific v. United States 6-5023 5-5023 United States 6-5023 United States 6-5023 United States 6-5023 United States 5-5023 United States 6-5023 United States 6-5023 United States 5-5023 United States 6-5023 United States 5-5023 United all other states. That's all I'm looking for from AT&T, but then you go to the cases like Godley and Amdahl, particularly in the Godley case, which I think is a pivotal case for us. There, the government was able to avoid a fully-completed contract because the illegality tainted the contract and there was a causal link. Well, in our case, we're arguing the same that this illegality was so blatant and it was intentional. The government, we want to be able to prove if we're able to go to trial on this issue, is that the government knew from day one what they were doing, but the surety didn't. The surety came in after the termination, the contractor didn't know about it either, the surety didn't know about it, came in in good faith and completed the project, spent $3.5 million completing the project, and then found out after the fact that it was an illegal contract. If it had been a legal contract, then that's what the surety's supposed to do, is come in and complete and pay that money to complete, but not in a situation where it was void, ab initio, from the very beginning. And the government tries to argue it both ways in their brief. They say that we should have asserted the illegality at the time of the bid, but we had no knowledge of that, and yet in other parts of their brief, they're claiming that this was a legal contract. So they're all over the place as far as what's legal and what's not. From our standpoint, the illegality is crystal clear, in that it gives rise to the public policy analysis, and then that gives rise to the Amdahl and Godley analysis. And then, you can't have it both ways. If the government can void a contract based on Godley, a fully completed contract, why should not the surety be allowed to do that? Especially when you go back to insurance companies. Because the statute didn't give them the right to do it. That's the reason. But our contention is, you don't need that. Okay? The statute in AT&T, that's what I take away from AT&T. First, the main analysis of the AT&T statute doesn't apply. But the takeaway, I think it's Head Note 7, says that you then, if it doesn't address invalidation, and our statute doesn't, then you do the public policy analysis. And I think we have one of the clearest cases you could possibly have, where they violated the public policy. Congress is supposed to authorize new construction around the country. In this case, they use maintenance funds. Let me ask you, in AT&T, the AT&T court quoted with approval, Longshore v. The United States, where it says, Congress has undoubted capacity to oversee the performance of executive branch agencies consistent with its constitutional authority. It is not for this court to instruct Congress on how to oversee and manage its creations. It cites another case. It seems to me that the statutes that are involved in this case, was it 2805 and 2811 of Title 10, fall within that statement. I think they're much broader, because I think the public policy is so clearly violated, because Congress has put this lid, this limit, this ceiling on the government, so they don't spend money they're not supposed to spend. How does the result that you're seeking here assist in the enforcement of that public policy? Because you're saying the government still has to pay, you know, if the contract is illegal, they've got to pay under quantum narrowing. How does that result help to enforce the policy of the statute, or help to achieve the policy of the statute? Because otherwise, you're encouraging them to break the statute, to violate the statute, and use maintenance funds, instead of repairing an air conditioner, they're building a building. That may be the case, but aren't there other remedies for that? If government officials are violating procurement statutes, they can be disciplined appropriately. I mean, I guess what I'm saying is, isn't that really another side of the house, so to speak? Well, I agree with that, but the bedrock principle here is that it is illegal. The contract was illegal. That's what we want to be able to prove. It's void ob initio. It becomes an implied in fact contract. An assurity that comes into that circumstance, first they, if they knew it was illegal, they wouldn't have issued the bond. If they had found out later after they issued the bond, they would have denied coverage when the termination occurred, saying this is illegal. And under Godley, I think they'd be successful in stating that they did not have to perform. But in this case, they didn't know. How does it help the congressional objective that they limit the amount that the government can spend, and under your theory, the government's obligated for even more? How does that vindicate the public policy reflected in the statute? Well, because in this specific case, the government committed fraud, and there was illegality. So yes, it punishes the government in this particular case, but the overall public policy is the fraud was putting the contract out for bid, knowing that it was illegally funded and should not go forward. Mr. Wilson, you're into your rebuttal. We'll give you a full rebuttal time. We'll hear from the government. Mr. O'Connell? May it please the Court. My reading of the AT&T cases and the Godley cases is a bit different than opposing counsel's. First of all, with respect to the purpose of the statutes at issue, as I think the trial court correctly pointed out here, United Pacific actually has a much weaker case here than the plaintiff did in the AT&T case, because the reason is is that in the AT&T case, there was a connection between the purpose of the statute and what happened to the contractor. The statute was passed because Congress was concerned about the use of fixed-price contracts for these research and development projects of the military. They used a fixed-price contract, and there were cost overruns. Here, Judge Firestone went at some lengths, looked at the legislative history and also the language of the statutes, found that there was nothing in either the statute itself or the legislative history which indicates some intention to benefit a surety or a contractor. What would happen here if the government, in the middle of contract performance, had said, whoops, we shouldn't have entered into this contract, it violates the statute, and we're not going to pay you any more money? Well, there's actually, well, what would happen is, is that under the Air Force regulations, they would have to stop work on the contract and just get the contract funded. So the government could do this. The government could say, this contract violates this statute, we're stopping. We're stopping it, and we'll get the money from the right source so that they can straighten out the funding issues. Okay, so what we're really dealing with is a situation in which, in your view, the contract's voidable at the instance of the government, but not at the instance of the contractor. Well, I'm not saying it's voidable. All we're saying is that if the agency is taking the money from the wrong pot, you just go back and straighten it out so that you're getting the money from the correct pot. Well, if they can't get the money from another pot, they could stop and say, you know, we can't go forward with it. You're saying that case would be a termination for convenience. It would probably be a termination for convenience under those cases. And, by the way, in a termination for convenience, obviously, the contractor would be limited to the contract price minus what has already been paid and minus work not done. Why would it be a termination for convenience? Why can't the government just say, this is an illegal contract, we're not going forward with it? Well, in that case, you know, depending on how the hypothetical is framed, presumably the contractor would be paid for any work that is done. So I don't see how there would be any harm to the... Yeah, yeah, they could go in and assert a quantum narrow claim under all cases. But your view is that the government could refuse to go forward with the contract and raise the illegality question, but the contractor can't do that. Well, if it was a statute like it is here, where it's a statute designed... I'm talking about this statute. Under this statute, the government could say, whoops, we made a mistake, we didn't have any authority to do this, we're not going to go forward with this contract, but that contractor has no ability to raise that issue. I believe that's correct, and I believe, in fact, Judge Schall wrote in the Cessna opinion that if it's a statute that's designed to benefit the government and not the private contractor, the private contractor cannot raise the illegality issue. Just turning to Godley for a moment, I believe that Godley also does strengthen the government's case as well, because what Godley says is that the record must show some causal link between the illegality and the contract provisions. Here, there's no contract provision which was affected by this illegality issue. They didn't have to do any more work, they didn't have to do any less work, they didn't have to do work any differently, they didn't get paid at a different time. It was just strictly where the money came from. So here, even assuming that the contract was illegal, it didn't affect the contractor in any way because the contract remained the same. Nothing was different from the contractor's perspective. The contractor was treated completely the same here when the contract was funded from operations and maintenance funds as if it had been paid from another source of funds. If there are no further questions, I would ask the Court to affirm the opinion of the Court of Federal Claims. Thank you. Thank you, Mr. O'Connell. Mr. Wilson? On this issue of the government having certain rights but the contractor or surety not having those rights, I think that's wrong and I think that goes to the very basic premise of why we filed this appeal. A case that I think is on point is National Surety v. U.S. which states that there must be consideration for the surety's rights. In this case, there was no consideration. It's void from day one. They intentionally do what they've done, the government does, and they basically hoodwinked the contractor and then the surety out of millions of dollars. What's the evidence that the government did this on purpose? Well, that's what would have to be presented at trial. But if you look at what it was, it was new construction. Is there a fraud claim here? I think there's a misrepresentation claim and potentially a fraud claim if the evidence can't be presented clearly. Did you plead a fraud claim? We pled fraudulent misrepresentation, yes. Where do I find that? I guess what you're saying is there was a fraudulent misrepresentation in your view to all prospective bidders. I mean, there's no, there was no fraud directed intentionally at your client. I mean, you're just saying because of this, what you say was this funding problem, the way the procurement was structured, that all the bidders were given the wrong scoop. Right? Well, but that's what we have to present and that's going to be factually driven. But basically they took an old World War II building and they turned it into a modern office building. What I'm saying is why is it necessary for you to prevail? Why do you have to allege fraud? I mean, if in fact a policy was violated that was meant to benefit in some way a contractor, the fact that the government had no fraudulent intent makes no difference. Well, I would agree with that as an alternative account. Our main thrust, our main claim is breach of contract. But this contract's void of an issue and applied in fact contract and quantum merit recovery. I guess what I'm saying is that, I'm maybe not saying it the right way, but I mean, even if there was fraud, if the statute, if the government employees or officials did intentionally go out of their way to violate these statutes by structuring this procurement, if we were to find, as the court below did, that this wasn't meant for the benefit of the contractor, these statutes, you still wouldn't win, even if there was fraud. But then I go back to AT&T. It has to be a public policy analysis. I understand, but the point is you don't need to show fraud. I agree with that. I agree with that. It's an alternative account. And I don't have the complaint right here, but I believe it's the last account. It's there. It's there. But breach of contract is our main action. And that's what we base this upon. And it's not just a contractor, because this contractor goes bankrupt shortly after being terminated. And that's part of the issue here also, is that if there hadn't been a bond, there wouldn't have been a loss at all. That it was only because of this whole situation with funding, legal funding, that this came about at all. Otherwise, they never would have been bonded, because they went bankrupt and didn't qualify for bonding shortly after this. Does the Court of Federal Claims have jurisdiction over a fraud claim? Or does that come under the Tort Claims Act? Probably more properly under the Tort Claims Act. But misrepresentation is also pled within that count. And we think clearly we'll be able to show misrepresentation. But I agree with Judge Shaw, we don't need that to recover. It's back to breach of contract. Well, the question is, does it give you any better right to recover than the illegality theory? Well, I think it's more in terms of if we go back to the trial court, that we'll be able to show how obvious it was, how blatant it was. And that they did violate. They have to take these approvals for a new construction. Congress usually takes a year or two. So they were not only using maintenance funds they should have used to replace a bad air conditioner to build a whole new building. But then they circumvented Congress. And so that's why the bedrock here is that it's illegal and a surety shouldn't have to perform and pay the money out that it normally would when the contract itself is illegal. The only other thing I would say is that government's counsel in reference to Godley, there is an impact here and it's what I was just referring to. That there never would have been a bond if the surety had known there was a legal contract. They never would have bonded the contractor. And if they would have found out the next couple of years before they came in to complete the work they would have denied coverage under Godley and Amdahl in this series of cases. And I think then we would have won on that position. Then there would have been a Miller Act issue. Yes. It would have been settled. This is a Miller Act bond. So yes, that's correct, Your Honor. And I guess I would end that I don't think the government can have it both ways. What we're arguing here is the bedrock principle of illegality should apply to the benefit of the surety. This is not where a surety just pays to perform. They do that all the time. This is where there was illegality and there should be a recovery when that happens,  as what the government did in this case. Thank you, Mr. Wilson.